UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Thumbelina Brown, ) | Civil Action No.: 4:02-3973-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| McLeod Regional Medical Center of the ) | |
| Pee Dee, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this matter, the plaintiff, Thumbelina Brown ("Brown"), alleges disparate treatment race discrimination under Title VII, 42 U.S.C. § 3000e, *et seq*., and 42 U.S.C. § 1981. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiff filed this case on October 29, 2002. Defendant removed the case to this Court on November 25, 2002, and filed its answer on November 27, 2002. Defendant filed a Motion for Summary Judgment on April 15, 2004. Plaintiff filed a response on April 27, 2004. Defendant filed a reply on May 7, 2004.

This matter is now before the undersigned for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Thomas E. Rogers, III, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 73.02(B)(2)(g). In his Report, Magistrate Judge Rogers carefully considers these issues and recommends that the defendant's Motion for Summary Judgment be granted. Plaintiff filed objections to the Report on

January 24, 2005. Defendant filed a response to plaintiff's objections on January 20, 2005. In her objections the plaintiff alleges that the Report's finding that the defendant is entitled to summary judgment is in error. The plaintiff objects to (1) the Magistrate Judge's application of the *McDonnell Douglas* shifting burden test at the summary judgment stage of this case and (2) the Magistrate's finding that the record does not present a genuine issue of material fact as to the fourth element of the plaintiff's race discrimination claim.

>In conducting this review, the Court applies the following standard:
>
>The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

### **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine

2

issue of material fact, and the Court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

**Facts**

The Court agrees with the factual and procedural background as set forth by the Magistrate Judge in his Report and Recommendation. The Court therefore adopts the Magistrate Judge's version of the facts in this case to the extent such facts are not specifically included herein.

Defendant McLeod Regional Medical Center of the Pee Dee, Inc. is a regional healthcare system. Plaintiff applied for a Nursing Assistant position at defendant's hospital in Florence, South Carolina, in August of 1978. Defendant hired plaintiff on September 12, 1978. At that time, she was assigned as a Nursing Assistant to the Obstetrics and Gynecology units of the hospital.

In the mid-1980s, plaintiff injured her back at work when she tried to catch a patient who was falling. Apparently no workers compensation benefits were paid and, after plaintiff used her sick days and leave days, she returned to work as a Nursing Assistant, although she continued to experience pain in her back and legs. The position of Unit Secretary, which was less physically

demanding than the Nursing Assistant position, became available and plaintiff accepted that position in October of 1998.

On or about May 24, 2000, plaintiff broke her ankle in an automobile accident. Following surgery on her ankle, she was unable to return to work and she requested a leave of absence. Plaintiff's supervisor, Hart Smith, sent a memo to the plaintiff stating:

> We are sorry to hear of you accident week before last. I have tried to call you to see how you were doing but we do not have a phone number. The only number that we have is one that has been disconnected. I have received your "certificate of absence" from you but will need a "medical certification" completed as well. I have attached a copy for you and also a copy of the FMLA notice. Please remember that you must contact Human Resources as well as the insurance company for your Short-Term disability. This must be done after 15 calendar days from you first day of absence. Please let us know if there is anything we can do for you. Keep us informed on your progress and when we can anticipate your return to work. Once again I hope you are better and if there is anything we can do please let us know.

(Plaintiff's Dep. Exhibit 10) Dr. Angus McBryde completed a Medical Certification on June 12, 2000, indicating plaintiff could not return to work and would be unable to for three (3) months or longer. Plaintiff kept defendant current on her condition.

On July 17, 2000, a Human Resources employee sent a letter to plaintiff informing her that her request for medical leave of absence was approved beginning May 26, 2000, and that her leave did not qualify for FMLA protection.[1] Plaintiff was also informed that "[b]efore returning to work from a leave of absence, you must contact Human Resources, who will coordinate your return to work with your department." (Plaintiff's Dep. Exhibit 12)

Dr. McBryde completed a Medical Certification for the plaintiff on August 14, 2000. On that form, he circled both "yes" and "no" in response to whether plaintiff was currently able to work. He

---

[1] Plaintiff did not qualify for FMLA protection because she did not work the minimum number of hours in her previous year of employment to qualify under the statute.

wrote that plaintiff's physical limitation upon return to work was "no standing or walking" and that the duration of the present incapacity was indefinite, "depending on off feet." (Plaintiff's Dep. Exhibit 15)

On November 22, 2000, plaintiff return to Dr. McBryde for a follow-up visit. After a discussion of plaintiff's ability to return to work, Dr. McBryde placed restrictions on her ability to return to work. These restrictions, based on an eight (8) hour days, included (1) no more than ten (10) minutes per hour on her feet, (2) no more than five (5) minutes walking per hour (this is included in (1)), and (3) should not carry anything over three (3) to four (4) pounds during the minimal time on her feet.[2] There are also notes, written in a different handwriting, indicating "no walking if possible. If walking, only 10 min at time w/ 20 min resting period." (Plaintiff's Dep. Exhibit 16) Plaintiff took this note with restrictions to defendant because she was ready to return to work. Defendant informed plaintiff that they could not accommodate her restrictions.

Plaintiff returned to see Dr. McBryde on March 19, 2001. His office notes indicate: "She may return to work 4/14/01 but should limit standing and walking as much as possible." Dr. McBryde completed another Medical Certification on April 9, 2001. As to the duration and frequency of episodes of plaintiff's incapacity he wrote "intermittent pain and [increased] limp . . . job cannot entail standing [and] walking." (Plaintiff's Depo. Exhibit 19) He noted a twenty percent (20%) permanent impairment of plaintiff's right foot and that her incapacity ended on April 1, 2001. Dr. McBryde indicated that she could return to work full schedule and placed the restriction of "no standing or walking as part of job." Because of these restrictions, plaintiff was not allowed to return to work.

---

[2] There are also two restrictions listed that are illegible.

5

After Dr. McBryde's April 9, 2001 note, plaintiff met with Hart Smith, plaintiff's supervisor, and two benefit specialists of the defendant, Miriam Carter and Pam Erwin.[3] Following this meeting Carter, Smith, and Erwin were unable to determine if plaintiff was capable of returning to work with Dr. McBryde's restrictions. Consequently, Ms. Carter contacted John Zelenka, defendant's Work Recovery Manager, and asked him to perform a work site evaluation to determine if plaintiff could perform the essential functions of the Unit Secretary position with the restrictions placed on her by Dr. McBryde. As part of this evaluation Mr. Zelenka contacted Dr. McBryde's office, evaluated the physical requirements of the Unit Secretary position by interviewing Hart Smith and one of the Unit Secretaries, and observed a Unit Secretary to determine how much time was spent walking and standing. Based upon this information Mr. Zelenka determined that plaintiff could not perform the essential functions of the Unit Secretary position while adhering to the restrictions given by Dr. McBryde .

Ms. Carter then asked Mr. Zelenka to determine if there were any accommodations the defendant could make to allow plaintiff to perform her job. Mr. Zelenka contacted Dr. McBryde's office and they suggested the use of a motorized scooter. Mr. Zelenka determined that the scooter would not fit in all areas pertinent to the plaintiff's job and would not be allowed in certain areas because of space limitations. As a result, he determined that a motorized scooter was not a viable solution.

On June 1, 2001, Dr. McBryde completed a prescription form stating plaintiff "may return to work 6-1-01 but should limit standing and walking as much as possible–please call if you have any

---

[3] It is the defendant's policy that when an employee is to return to work with medical restrictions the respective department head meets with a Human Resources specialist to discuss the interplay between the restrictions and the essential job functions of the employee. Ms. Carter testified that essential functions are determined by the job description, Key Results, and job specifications.

questions." (Plaintiff's Depo. Exhibit 20) Defendant's Director of Human Resources Compensation and Benefits sent a letter to plaintiff dated July 2, 2001. That letter informed plaintiff:

> We have completed a full and fair review of your appeal for short-term disability benefits. We find no additional information that would allow us to overturn Liberty Mutual's decision to terminate your short-term disability benefits on August 15, 2000.
>
> *****
>
> However, we do recognize that this has been an unusual situation and has worked an extreme hardship for you. You were not qualified for disability benefit, and yet, we could not let you work with the restrictions your doctor has imposed. Therefore, in the interest of goodwill, we have made the decision to pay you an amount equal to the maximum short term disability benefits allowed under the plan.
>
> This payment is not an admission that you are entitled to either short-term of long-term disability benefits and may not be construed as such. By your acceptance of this payment, you agree that you will not use this payment in any manner in regard to any claim for short-term or long-term disability benefits under a McLeod plan.

(Plaintiff's Depo. Exhibit 22)

> On August 31, 2001, plaintiff again had an office visit with Dr. McBryde. His notes indicate
>
> I have tried to get in touch with Hart Smith, 843-679-8465, but have been unable to do so. I would like to help her, or at least be definitive about whether she is or is not able to work.
> It is my estimate that she will be unable to carry out the full workload for a [sic] indefinite period of time, but estimated at least six months.
>
> *****
>
> Overall, situation is static, I would be glad to write her a letter regarding disability if, indeed, there is no work for her with the limitations that I have outlined and which I estimate will be necessary for six months. She will let me know and I will continue to try to get in touch with Hart Smith.

(Plaintiff's Depo. Exhibit 21)

Under defendant's leave of absence policy employees who remain on leave for twelve (12) months without returning to work are subject to termination. Plaintiff had been on leave for twelve

7

(12) months on May 26, 2001, without returning to work. At this time defendant concluded that plaintiff could not perform the essential functions of her job and they offered her the opportunity to transfer to another position within McLeod that was within her restrictions. Ms. Carter arranged for plaintiff to meet with the Recruiter to locate a job to which plaintiff could transfer and explained to plaintiff that she had sixty (60) days to find another job to which she could transfer. According to Ms. Carter, she telephoned plaintiff on several occasions to inform her of positions available that met the plaintiff's restrictions and told her that she should contact the recruiter immediately. Plaintiff never had any further contact with defendant about transferring to another position.[4] Hart wrote a letter dated to plaintiff dated August 31, 2001, stating:

> Our records indicate that you began a leave of absence on May 26, 2000. According to McLeod's Leave of Absence policy, a leave of absence ends after 12 consecutive months. However, on July 3, 2001, Human Resources extended your Leave of Absences for 60 additional days to allow you an opportunity to find another position with McLeod Health where your restrictions of "standing or walking limited as much as possible" could be accommodated.
>
> Unfortunately, you did not apply for any open positions. Therefore, your employment with McLeod Health will be terminated on September 1, 2001.
>
> We wish you the very best and thank you for your contribution to McLeod and for your assistance to the patients that we serve.

(Plaintiff's Depo. Exhibit 23)

**Application of the *McDonnell Douglas* Shifing Burden Test at the Summary Judgment Stage**

The plaintiff argues that it is improper for this Court to use the *McDonnell Douglas* burden shifting test at the summary judgment stage of this case. This argument is based on the U.S. Supreme court's decision in *Desert Palace, Inc., v. Costa*, 539 U.S. 90 (2003). Plaintiff suggests that in *Desert*

---

[4] Plaintiff does not specifically deny that Smith called her or left messages for her, but she does state that she did not need a new job because she could perform her old one and that she felt defendant was "not going to let me work" so she just waited for the recruiter to call her. (Plaintiff's Depo. at 189-190)

8

*Palace*

> the [United States Supreme] Court addressed the mixed-motive versus single motive distinction which had formerly been employed by Federal Courts since the decision in Price Waterhouse v Hopkins, 40 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and found that the legislation did not allow a shifting burden of proofs, but called for a mixed motive analysis of all claims, whether presented through direct or circumstantial evidence. This finding, and the clear legislative intent of creating an affirmative defense of the employer, rather than a shifting burden standard at summary judgment precludes the use of the McDonnell Douglas Shifting Burden Test at the Summary Judgment stage.

(Objections pp. 1-2) The plaintiff alleges that "[t]he Fourth Circuit has since correctly continued to apply the shifting burden analysis to ADEA claims, which, unlike the ADA, Title VII and 42 U.S.C. 1981, does require, in the direct statutory language, a single motive analysis." (Objections p. 2) She also objects to the Magistrate Judge's reliance on *Hill v. Lockeheed Martin Logistics Management*, 354 F.3d 277 (4th Cir. 2004), with regard to his determination on this issue on the basis that the Court in that case was evaluating an ADEA claim and a sex discrimination claim "which explains why the Court would have applied the shifting burden type analysis to those claims in that case."

Defendant asserts that the Magistrate Judge correctly used the *McDonnell Douglas* analysis in this case. The assertion is based on the allegation that (1) *Desert Palace* did not eliminate the *McDonnell Douglas* standard of proof and (2) that plaintiff's objection does not change the ultimate outcome of this case because the Magistrate Judge analyzed the evidence under both the mixed-motive standard of proof and the *McDonnell Douglas* analysis.

### *McDonnell Douglas* v. Mixed-Motive Standards of Proof

The courts have recognized that there are some situations where dual motivations, one illegal and one legal, may exist, and simultaneously motivate an employer's actions. *See, e.g. Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). These situations are referred to as "mixed-motive" cases. Prior to the Civil Rights Act of 1991 ("the Act"), a finding that the employer had a permissible

9

reason to make its decision allowed the employer to escape liability altogether. *Id*. The Civil Rights Act of 1991 partly clarified, partly affirmed, and partly overruled the *Price Waterhouse* decision. *See* 42 U.S.C. § 2000e. The Act affirmed the decision that mixed motive is an affirmative defense on which an employer bears the burden of persuasion. However, the Act overruled the *Price Waterhouse* decision with regard to damages, stating that an employer may avoid only (1) liability for monetary damages and (2) being subject to an order requiring instatement, reinstatement, or promotion.

After the passage of the Civil Rights Act of 1991, most appellate Courts required direct evidence for the mixed motive framework to apply. *See, e.g. Taylor v. Virginia Union Univ.*, 193 F.3d 219 (4th Cir. 1999); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir. 1991); *Jones v. Gerwens*, 874 F.2d 1534, 1539 (11th Cir. 1989). However, the Supreme Court in *Desert Palace, Inv. v. Costa*, 539 U.S. 90 (2003), held that direct evidence of discrimination is not required for a plaintiff to obtain a mixed-motive jury instruction under Title VII. That case held that the statute's words are unambiguous and the law does not require a plaintiff to make a heightened showing through direct evidence. *Id*. at 98-99. Rather, a plaintiff may prove her case by a preponderance of the evidence using direct or circumstantial evidence. *Id*. at 99.

Plaintiff's claim is that the *McDonnell Douglas* analysis is no longer appropriate for use at the summary judgment stage of a case. However, plaintiff fails to provide this Court with any authority, from the Fourth Circuit or any other Circuit, to support this position. In the *en banc* decision of the Ninth Circuit, which was affirmed by the Supreme Court in *Desert Palace*, the Ninth Circuit specifically discussed the relationship between the *McDonnell Douglas* burden shifting analysis and the mixed motive analysis. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 854-57 (9th Cir. 2002, *aff'd*, 539 U.S. 90 (2003). In that case, the Court ruled that "*McDonnell Douglas* and 'mixed-motive' are not two opposing types of cases. Rather, they are separate inquiries that occur at separate

10

stages of the litigation." *Desert Palace*, 299 F.3d at 857. More specifically, the Ninth Circuit found that the *McDonnell Douglas* burden-shifting analysis was the pretrial standard in employment discrimination cases and thus should be applied to summary judgment proceedings. *Id*. at 854.

Since the *Desert Palace* case, the Supreme Court has reaffirmed that the proper standard for determining summary judgment in an employment discrimination case is the *McDonnell Douglas* analysis. *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003). Justice Thomas, who wrote the majority opinion in *Desert Palace*, also wrote the majority opinion in *Raytheon*. In *Raytheon*, Justice Thomas confirms that the use of the *McDonnell Douglas* burden-shifting analysis is the proper analysis to be used in discriminatory treatment cases. *Id.* at 49 n. 3.

The Fourth Circuit addressed the *Desert Palace* case in *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277 (4th Cir. 2004). In that case, the plaintiff was alleging violations of Title VII, the Age Discrimination in Employment Act (ADEA), and the New York State Human Rights Law. The Fourth Circuit stated that "a plaintiff may avert summary judgment and establish a claim for intentional sex or age discrimination through two avenues of proof." *Id*. at 284. The first avenue, mixed motive analysis, is by

> demonstrating through direct or circumstantial evidence that sex or age discrimination motivated the employer's adverse employment decision. The employee, however, need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor. In such cases, historically referred to as "mixed-motive" cases, it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons.

*Id*. The second avenue is "to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id*. at 285.

11

> This Court is unclear as to the distinction that the plaintiff is trying to make when she says:
>
> the [*Hill*] case upon which the Magistrate bases his determination that Plaintiff's arguments concerning the application of the shifting burden to test race discrimination cases is without merit, is a case in which the Court was evaluating an ADEA claim, as well as a sex-discrimination claim, which explains why the Court would have applied the shifting burden type analysis to those claims.

(Objections p. 2) Title VII provides:

> It shall be unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). Title VII clearly covers both race, which is at issue in the instant case, and sex, which was at issue in the *Hill* case. That direct evidence may have been presented or required in *Hill*[5] with regard to the ADEA claim does not negate the fact that sex discrimination was also an issue in that case.

*Hill* directly defeats the plaintiff's argument that the *McDonnell Douglas* standard of proof is no longer applicable in employment discrimination case at the summary judgment stage of a law suit. Instead, that case seems to support the position that it is still a viable standard of review for this Court at the summary judgment stage. Since *Desert Palace* the Fourth Circuit has implicitly held that the *McDonnell Douglas* and mixed-motive analyses continue to be valid, but separate alternatives of proof in Title VII discrimination cases. *Hill*, 354 F.3d at 284-85; *See Murray v. United Food & Commercial Workers Union*, 100 Fed. Appx. 165 (4th Cir. 2004) (unpublished) (analyzing single-motive/pretext framework claims and mixed-motive claims separate where the plaintiff proceeded

---

[5] *See EEOC v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 164, n.1 (4th Cir. 2004) ("We have previously assumed, without deciding, that direct evidence is still a prerequisite for a mixed-motive analysis in ADEA cases. We are not called on to decide that issue because the EEOC has presented direct evidence of discrimination." (internal citations omitted)).

under both); *Jones v. Southcorr*, 324 F. Supp. 2d 765, 775 (M.D.N.C. 2004) (recognizing *Hill*'s separate discussion of single-motive and mixed-motive analysis). The Fourth Circuit has stated that

> [r]egardless of the type of evidence offered as support for [a] discrimination claim (direct, circumstantial, or evidence of pretext), or whether [the plaintiff] proceeds under a mixed-motive or single-motive theory, "the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."

*Murray*, 100 Fed. Appx. at 172. Plaintiff's objection that the *McDonnell Douglas* analysis is improper to use at the summary judgment stage is without merit.

**Ultimate Decision**

The defendant also argues that, even if plaintiff's discrimination claim is analyzed under the mixed-motive standard, plaintiff failed to present evidence that defendant's employment decisions were based on her race. The Magistrate Judge analyzed plaintiff's allegations of discrimination under both the *McDonnell Douglas* and the mixed-motive standards of proof:

> Plaintiff may also proceed under the mixed-motive method of establishing intentional discrimination. Under this method, a plaintiff must present sufficient evidence, direct or circumstantial, that, despite the existence of legitimate, nondiscriminatory reasons for the adverse employment action, an illegal factor (i.e., race) was a motivating factor in the decision. Plaintiff need not show race was the sole motivating factor but only that it was a motivating factor. The facial bias must come from a relevant decision maker. Also, the protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome."
> Clearly, plaintiff's claim that she was placed on leave without pay was motivated by racial bias is without merit. Plaintiff was not eligible for FMLA leave. Therefore, she was placed on leave under defendant's non-FMLA leave policy. This leave is without pay. There is no evidence to suggest that race played any role in this decision.
> Plaintiff also claims intentional discrimination based on defendant's refusing to allow her to return to work with restrictions. She relies on her assertions that defendant allowed other, similarly situated white employees to work with restrictions which were at least equally restrictive as plaintiff's restrictions. As discussed above, plaintiff['s] comparators were not similarly situated, and, therefore, plaintiff has failed to make a sufficient showing that race played a motivating role in defendant's decisionmaking.

13

> Plaintiff also claims the termination of her employment was motivated in part by racial bias. It is uncontradicted that defendant's leave of absence policy provided for termination if the employee is unable to return to work after a 12 month period. Plaintiff was not able to return to work within 12 months of taking a leave of absence. However, defendant did not terminate her employment at that time but extended her leave of absence to allow her to transfer to another position that she could perform. Plaintiff failed to do this.

(Report pp. 25-27 (internal citations omitted)) The Magistrate Judge clearly analyzed this case under the mixed-motive analysis in addition to the *McDonnell Douglas* analysis.

**Genuine Issue of Material Fact as to the Fourth Element of Plaintiff's Discrimination Claim**

The plaintiff also objects to the Magistrate Judge's finding that the record does not present a genuine issue of material fact as to the fourth element of the plaintiff's race discrimination claim: that other employees who are not members of the protected class were retained under apparently similar circumstances. Plaintiff argues first, that there is a genuine issue of material fact as to whether Powell and the plaintiff were substantially similar and second, that there is a genuine issue of material fact as to whether the defendant's actions raised an inference of discriminatory intent. Defendant contends that the Magistrate Judge did not err.

In order to show a *prima facie* case for race discrimination, the plaintiff must show (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002).[6] It is only this fourth element that is at issue in the instant case as there is no dispute as to the first and third elements and defendant has not objected to the Magistrate Judge's recommendation that there is a genuine question of material fact

---

[6] The required elements of a *prima facie* case of employment discrimination are the same under Title VII and § 1981. *Gairola v. Commonwealth of Va. Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

14

as to the second element.

**Similarly Situated Comparator**

Plaintiff submitted in response to defendant's motion for summary judgment that there were nine (9) other employees who were allowed to return to work with medical restrictions and, therefore, treated more favorably than her. In her objections, plaintiff alleges only that the Magistrate Judge erred in finding that there is no genuine issue of material fact as to whether Debra Powell was substantially similar to the plaintiff.

Plaintiff must establish that "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000); *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 910 (8th Cir. 1999); *Shumway v. United Parcel Serv., Inc.*, 188 F.3d 60, 64 (2d Cir. 1997).

Ms. Powell was a unit secretary for the defendant for fifteen (15) years. She worked in all units, including 4-South and 2-South, the two (2) in which the plaintiff worked. Powell had to do a good bit of walking, mostly to find nurses and technicians who were wanted on the phone, as unit secretary. Ms. Powell testified that she would have to find someone ten (10) to fifteen (15) times a day on a busy day, but would never venture more than seven (7) or eight (8) car lengths from her duty station.

In April of 1999, Powell suffered a non work-related back injury. She was initially out of work from April 7 through 16. Because she was eligible for leave under the FMLA, all of her absences were classified as personal medical leave. On May 4, 1999, Powell had an epidural steroid

injection in her back. Following this injection, her physician released her to work four (4) hours per day with a restriction of no heaving repetitive lifting or bending. Beginning June 9, 1999, Ms. Powell took a personal medical leave of absence in order to have back surgery and remained out of work until August 2, 1999, at which time she was released to return to work with no restrictions. On August 30, 2000, Ms. Powell was severely injured in a recreational vehicle accident and was hospitalized for eleven (11) days. Because she was eligible for FMLA leave, she was placed on personal medical leave of absence effective August 30, 2000. Powell was released to return to work without restriction on November 20, 2000.

The job description for unit secretary requires the ability to lift up to fifty (50) pounds and carry up to twenty-five (25) pounds **occasionally**. As noted by the Magistrate Judge, Powell's medical restriction did not prohibit the lifting of up to fifty (50) pounds, but restricted **repetitive** lifting of such weight. From this alone, the restrictions on returning to work are dissimilar and, therefore, Ms. Powell is not a proper comparator for purposes of Title VII. Ms. Powell's restrictions on their face did not conflict with job specifications.

Ms. Powell's physician released her to work on a reduced work schedule and she was allowed to work on a reduced schedule pursuant to the FMLA. However, plaintiff's physician did not release her to work on a reduced schedule. Additionally, plaintiff was on non-FMLA leave[7] while Ms. Powell was on FMLA leave. Unlike plaintiff, Ms. Powell was released to return to work with restrictions after less than one (1) month and without any restrictions after four (4) months. Plaintiff, on the other hand, was unable to return to work involving any standing or walking for a period of approximately six (6) months. Consequently, plaintiff has failed to present sufficient evidence to

---

[7] Plaintiff had not worked 1250 hours in the 12-month period preceding her leave and therefore, was not eligible for FMLA leave.

establish an issue of fact as to whether or not she and Ms. Powell were similarly situated.

**Inference of Discriminatory Intent**

Plaintiff argues that she has established facts from which an inference of discrimination may be taken. She alleges that:

> Plaintiff presented several different arguments, supported by the record, to show that the Defendant treated Plaintiff differently from her white co-workers, based on her race, both in general, at work, and specifically, in the matter at issue. Plaintiff testified to a patter of disparate treatment over her many years of service at McLeod. Testimony from Defendant's witnesses concerning job duties of a Unit Secretary were contradictory, when applied to the Plaintiff. There is evidence that Defendant did not abide by its own policies requiring them to make every effort to return Plaintiff to return to work. . . . The Judge failed to address the fact that at least one person was allowed to use the motorized scooter accommodation at work, which Defendant claimed was impossible for plaintiff.

(Objections pp. 4-5)

The plaintiff cites a Maryland District Court for the proposition that "the Court must examine instances of discriminatory treatment holistically and not atomistically." *See Settle v. Baltimore County*, 34 F. Supp. 2d 969, 985 (D. MD. 1999). The entire quote in *Settle* is:

> [W]hile it is certainly true that a court should examine instances of alleged discriminatory treatment holistically and not atomistically, *see Cook v. CSX Trans. Corp.*, 988 F.2d 507, 512 (4th Cir. 1993) ("[T]o focus on one piece of the record without considering the whole would distort the permissible inferences to be drawn."), this does not mean that evidence of a large number of meritless claims (or non-cognizable allegations) attains probative value when such claims are aggregated. To the contrary, in the absence of direct or circumstantial evidence of discriminatory intent, careful analysis of claims of disparate treatment in accordance with the well settled *McDonnell Douglas* paradigm is absolutely required.

*Id*.

Plaintiff's allegation that the Magistrate Judge "failed to address the fact that at least one person was allowed to use the motorized scooter accommodation at work, which Defendant claimed was impossible for Plaintiff." (Objections p. 5) The plaintiff does not tell this Court in her objections

17

who that individual is. From a review of the pleadings, it appears that plaintiff is referring to Anthony, a volunteer at the Hospital who is in a motorized wheelchair permanently. The Court notes that in the Report, the Magistrate Judge lists Anthony as an individual who the plaintiff asserts was retained under similar circumstances. The Report concludes that "[o]f the employees listed by the plaintiff as treated disparately, only Debra Powell and Detra Leake worked with or reported to the same supervisor. Plaintiff does not contest this." (Report p. 17) Consequently, plaintiff's assertion that the Magistrate Judge did not address that another individual was allowed to use a motorized wheelchair is without merit. The Magistrate Judge considered Anthony, but did not include him in the final analysis because he was not similarly situated because he was not supervised by the same person as the plaintiff.

Plaintiff testified that she observed Anthony coming onto the floor where she works in the motorized wheelchair. In her memo plaintiff states:

> While he may not, as a volunteer, have been substantially similar to the Plaintiff (he did not have the same supervisor), his presence in the nursing hall, using a motorized scooter or wheelchair, is far from insignificant to this case as evidence of pretext. . . . The assertion that the use of a motorized wheelchair as an accommodation can not be allowed by McLeod is rebutted by the fact that Anthony, regardless of his status (volunteer or employee) is allowed to use one in the same area. He and Plaintiff are substantially similar based on the fact that they both would be using a motorized wheelchair to move from one place to another on the hall where, according to the Defendant, it was prohibited.

(Plaintiff's Response to Defendant's Motion for Summary Judgment pp. 34-35)

As discussed more fully above and in the Report, plaintiff must establish that "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Radue v. Kimberly-Clark Corp.*, 219

F.3d 612, 617-18 (7th Cir. 2000); *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 910 (8th Cir. 1999); *Shumway v. United Parcel Serv., Inc.*, 188 F.3d 60, 64 (2d Cir. 1997). Plaintiff admits that Anthony did not have the same supervisor and were, therefore, not similarly situated. However, she also appears to argue that because they both would be using a motorized vehicle they would be similarly situated. This assertion runs contrary to the case law and plaintiff has presented this Court with no case law to support the assertion that a comparator can be similarly situated when not supervised by the same person. Additionally, there has been no evidence submitted that Anthony was required to go into the same areas as the plaintiff to establish that they are substantially similar.

## Conclusion

I find as a matter of law that there are no genuine issues of material fact and defendant is entitled to summary judgment as a matter of law. For the foregoing reasons, the undersigned overrules all objections, adopts the Report and Recommendation of the Magistrate Judge, incorporates it herein by reference, and **GRANTS** the defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

                                                 s/ R. Bryan Harwell
                                                 R. Bryan Harwell
                                                 United States District Court Judge

April 29, 2005
Florence, South Carolina